IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANNETTE MENLOVE, an individual, and VON J. MENLOVE, an individual, Plaintiffs, v. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| BANK OF AMERICA N.A.; BNY MELLON CAPITAL MARKETS, LLC a/k/a THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-9; and JOHN DOES 1-25, Defendants. | Case No. 2:12-CV-534 TS |

This matter is before the Court on Defendants Bank of America, N.A. ("Bank of America") and BNY Mellon Capital Markets, LLC's ("BNY") f/k/a Mellon Financial Markets, LLC and as the successor-in-interest to BNY Capital Markets, Inc., a wholly owned subsidiary of the Bank of New York Mellon Corporation, as Trustee for the Benefit of the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2007-9 (collectively referred to hereinafter

1

as "Defendants") Motion to Dismiss Plaintiff's Complaint.[1]  For the reasons provided more fully

below, the Court will grant Defendants' Motion.

## I.  BACKGROUND

This matter was removed to this Court from Utah state court on June 6, 2012.  Plaintiffs

Annette and Von Menlove brought this action to remedy wrongs they allege to have suffered

during the course of an attempted loan modification with Defendants.  The following statement

of facts is drawn from Plaintiffs' Complaint and the documents referenced therein.

On or about March 28, 2007, Plaintiffs obtained a refinance loan for $155,250.00 on

property Plaintiffs owned in Payson, Utah.  Plaintiffs obtained the loan through North American

Saving Bank.  In late 2009, Plaintiffs decided to seek a loan modification on their loan.  Plaintiffs

began a series of communications with Bank of America, the servicer of their loan, regarding a

loan modification.  In December of 2010, one of Bank of America's employees, "Elizabeth," told

Plaintiffs that to qualify for a loan modification they would have to be at least two months behind

on their loan payments.  At that point, Plaintiffs stopped making payments on their loan.  A few

months later, Plaintiffs contacted Bank of America and found that Elizabeth had been fired.

On or about February 17, 2011, Bank of America sent a letter and request for loan

modification packet to Plaintiffs.  In September of 2011, Bank of America sent Plaintiffs a letter

notifying them that they had an outstanding loan balance of $183,279.98.  Plaintiffs allege that

this amount was incorrect.  On September 16, 2011, an Assignment of Deed of Trust was

recorded stating that North American Savings Bank had transferred Plaintiffs' loan to BNY.

---

[1]Docket No. 4.

Bank of America continued to act as the servicer for Plaintiffs' loan.  Plaintiffs received no direct notice of this assignment.

On September 30, 2011, Plaintiffs received a notice from Bank of America stating that they had not received any past-due payments, and that the loan was being referred to the foreclosure review committee.  Over the course of the next three months, Bank of America attempted to contact Plaintiffs to discuss Plaintiffs' loan modification.  On two occasions Bank of America employees attempted to contact Plaintiff Annette Menlove at her place of employment.  On October 24, 2011, Plaintiffs sent a "Qualified Written Request" to Bank of America.  Bank of America acknowledged receipt of the request and indicated that a response would be sent within twenty business days.  On November 28, 2011, Bank of America sent Plaintiffs information regarding their loan.

On December 20, 2011, Plaintiffs received notice from Bank of America that their request for a loan modification had been denied.  On January 25, 2012, Plaintiffs received a letter and accounting from Bank of America providing that the balance on their loan was $153,473.49 as of November 29, 2011.  Plaintiffs allege that in the accounting there are several unknown transactions and payments.  On March 9, 2012, Plaintiffs received a notice of default, providing that Defendants would begin foreclosure.

Based on the preceding factual allegations, Plaintiffs bring the following causes of action: (1) breach of fiduciary duty; (2) breach of contract; (3) bad faith; (4) unjust enrichment; and (5) violations of the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs seek money damages

for Defendants' alleged violations and a deficiency judgment pursuant to Utah Code Ann. § 38-1-16.[2]

## II.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[3]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face"[4] and the court is not required to accept "conclusory allegations without supporting factual averments."[5]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[7]  As the Tenth Circuit stated:

> [T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the

---

[2]Utah Code Ann. § 38-1-16 is a provision of the mechanics' lien law for the state of Utah and, as such, is inapplicable to this case.  Furthermore, this code section was repealed by the Utah State legislature on May 8, 2012.

[3]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[4]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5]*Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[6]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7]*Twombly*, 550 U.S. at 570.

court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.[8]

The Supreme Court provided greater explanation of the standard set out in *Twombly* in *Ashcroft v. Iqbal*.[9]  In *Iqbal*, the Court reiterated that while Fed.R.Civ.P. 8 does not require detailed factual allegations, it nonetheless requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[11]  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[12]

The Court in *Iqbal* stated:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

---

[8]*The Ridge at Red Hawk, LLC  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[9]556 U.S. 662 (2009).

[10]*Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

[11]*Id*. (quoting *Twombly*, 550 U.S. at 555).

[12]*Id*. (quoting *Twombly*, 550 U.S. at 557).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[13]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] Thus,

notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[15]

## III. DISCUSSION

Defendants move the Court to dismiss each of Plaintiffs' causes of action for failure to state a claim. The Court will address each of Plaintiffs' claims in turn.

As a preliminary matter, Plaintiffs argue that Defendants' Motion to Dismiss should be denied for failure to comply with the procedural requirements of DUCivR 7-1(a). DUCivR 7-1(a) provides in relevant part: "Motions must set forth succinctly, but without argument, the specific grounds of the relief sought . . . . Merely to repeat the language of a relevant rule of civil procedure does not meet the requirements of this section." The Court is not persuaded that

---

[13]*Id.* at 678–79 (alteration in original) (internal quotation marks and citations omitted).

[14]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[15]*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

denial of Defendant's Motion is warranted in this case.  Defendants have remedied any non-compliance with rule 7-1(a) by filing a corrected Motion to Dismiss.[16]  Furthermore, Defendants' Memorandum in Support provided Plaintiffs and the Court notice of the specific grounds upon which Defendants seek relief.

A.      BREACH OF FIDUCIARY DUTY

Plaintiffs' first claim alleges that Defendants breached their fiduciary duties because "[w]hile servicing the loan, [Bank of America] acted as fiduciary to Plaintiffs in handling the loan, dealing with their funds, and advising them on the mortgage agreement."[17]  In their Response to Defendants' Motion to Dismiss, Plaintiffs expound upon this allegation and, in a novel argument, assert that Defendants breached a fiduciary duty because they engaged in self-dealing during the practice of law.

To the extent Plaintiffs allege Defendants owed them a fiduciary duty merely because of their status as a loan servicer or lender, such claim fails as a matter of law.[18]  Plaintiffs' argument that Defendants engaged in the practice of law is similarly unavailing.

"The practice of law, although difficult to define precisely, is generally acknowledged to involve the rendering of services that require the knowledge and application of legal principles to

---

[16]*See* Docket No. 8.

[17]Docket No. 2-1, at 16.

[18]*See Brockbank v. JP Morgan Chase Bank, NA*, 2012 WL 1142911, at *5 (D. Utah Apr. 4, 2012) (citing *First Sec. Bank v. Banberry Dev. Corp*., 786 P.2d 1326, 1332 (Utah 1989)) (holding that "in an arms length transaction with no confidential relations between them, as is the case in a typical consumer loan transaction, a bank has no affirmative duty to the borrower").

serve the interests of another with his consent."[19]  The practice of law "involves counseling,

advising, and assisting others in connection with their legal rights, duties, and liabilities."[20]

"[A]n element of the practice of law is the rendering of legal service or the giving of legal advice

to another usually for gain."[21]  This "may be evidenced by repeated acts indicating a course of

conduct, or by the exaction of a consideration."[22]

Here, Plaintiffs' breach of fiduciary duty claim is grounded on a single statement made by

an employee of Bank of America, Elizabeth, in response to Plaintiffs' phone inquiry regarding a

loan modification.  Elizabeth is alleged to have told Plaintiffs "to qualify for a loan modification,

Plaintiffs would have to be behind on their payments" and "that Plaintiffs needed to be at least

two months behind in their payments to be considered for a loan modification."[23]  Elizabeth's

statement as to Bank of America's internal requirements for obtaining a loan modification did

not require knowledge and application of legal principles.

Further, Plaintiffs have not alleged that Defendants stood to gain by giving the alleged

legal advice.  Nor have Plaintiffs alleged that Defendants or Elizabeth exacted any consideration

in exchange for the information provided.  In their Response, Plaintiffs assert that Defendants

stood to profit from the refinance and from receiving federal funds.  This proffer of conclusory

---

[19]*Utah State Bar v. Summerhayes & Hayden, Pub. Adjusters*, 905 P.2d 867, 869 (Utah 1995) (internal citations omitted).

[20]*Id*. at 869–870.

[21]*Bd. of Comm'rs of Utah State Bar v. Petersen*, 937 P.2d 1263, 1268 (Utah 1997) (internal quotations marks and citation omitted).

[22]*Id*. (internal quotation marks and citations omitted).

[23]Docket No. 2-1, at 3–4.

allegations is insufficient to establish a course of conduct on the part of Defendants meant to exact consideration or otherwise get gain.

The Court would also note that it is unclear under Utah law whether a private right of action exists for an individual to enforce Utah statutes prohibiting the unauthorized practice of law.  Plaintiffs claim at least $29,942.49 in damages for Defendants alleged unauthorized practice of law but provide no authority allowing such a recovery. [24]  In the absence of express statutory language, courts of the state of Utah are "reluctant to imply a private right of action based on state law."[25]  This Court is not inclined to break new ground where Utah courts have yet to tread.[26]

For the reasons provided above, the Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duty as a matter of law.

B.    BREACH OF CONTRACT

In their Complaint, Plaintiffs allege that the Defendants breached their contract with Plaintiffs "[b]y failing to provide notice of assignment pursuant to the contract, failing to provide an accurate accounting of the loan, and providing misinformation to Plaintiffs."[27]  In their Response, Plaintiffs expound on their prior allegations and argue that their future performance

---

[24]*Id.* at 17.

[25]*Buckner v. Kennard*, 99 P.3d 842, 853 (Utah 2004) (internal quotation marks and citation omitted).

[26]*See Aclys Int'l v. Equifax*, 438 F. App'x 689, 693 (10th Cir. 2011) (unpublished) (holding that "as a federal court, we are generally reticent to expand state law without clear guidance from its highest court" (internal quotation marks and citation omitted)).

[27]Docket No. 2-1, at 19.

9

under the contract was excused by Defendants' instruction "not to make payments so they would qualify for a loan modification."[28]

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[29]  The parties do not dispute that there is a contract.  However, Plaintiffs have not alleged sufficient facts to establish the remaining three elements.

In their Complaint, Plaintiffs acknowledge that they breached the terms of their agreements with Defendants in late 2010 when they stopped making payments on their loan. Plaintiffs do not allege that they continued to make the required payments pursuant to the agreements or otherwise came into compliance.  The Court is not persuaded that Defendants' employee's alleged statements—that "to qualify for a loan modification, Plaintiffs would have to be behind on their payments" and "that Plaintiffs needed to be at least two months behind in their payments to be considered for a loan modification"[30]—excused Plaintiffs' future performance.

Most significantly, under element three, Plaintiffs fail to allege facts to demonstrate that Defendants breached the agreements.  Plaintiffs' allegations regarding failure to provide notice of assignment of the loan fail because the relevant loan agreements specifically provide that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."[31]  Defendants' alleged provision of

---

[28]Docket No. 6, at 10.

[29]*Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[30]Docket No. 2-1, at 3–4.

[31]*Id*. at 44.

misinformation also fails to constitute a breach.  Plaintiffs have cited no term of the agreements

that would be violated by the issuance of a single letter containing an inaccurate loan amount.

Further, Plaintiffs received the letter containing the inaccurate loan statement in September of

2011, well after Plaintiffs stopped making payments on their loan.

Lastly, Plaintiffs' Complaint contains no allegations of harm resulting from, or damages

suffered, as a result of Defendants' alleged breach.  In sum, Plaintiffs have failed to plead facts

sufficient to maintain a claim for breach of contract against Defendants.

C.      BAD FAITH

The Court will construe Plaintiffs' third cause of action for bad faith as a claim of

violation of the covenant of good faith and fair dealing.  Plaintiffs' good faith and fair dealing

claim is premised on the same allegations as their breach of contract claim.  The parties agree

that the covenant of good faith and fair dealing "cannot be read to establish new, independent

rights or duties to which the parties did not agree ex ante."[32]  Nevertheless, Plaintiffs assert that

Defendants violated the covenant of good faith and fair dealing because they had a duty to deal

fairly and consider Plaintiffs for a loan modification.

Plaintiffs' argument fails for several reasons.  First, this Court has repeatedly held, on

similar facts, that a failure to provide a loan modification does not constitute a breach of the duty

of good faith and fair dealing.[33]  Additionally, the factual allegations of Plaintiffs' Complaint do

not support Plaintiffs' claim.  On the facts as alleged, the parties were engaged in discussions

---

[32]*Oakwood Village LLC v. Albertsons*, 104 P.3d 1226, 1240 (Utah 2004) (citing *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991)).

[33]*See Dohner v. Wachovia Mortg. FSB*, 2011 WL 4064067, at *2 (D. Utah Sept. 13, 2011); *Gallagher v. Alliance Bancorp*, 2011 WL 2789935, at *4 (D. Utah July 13, 2011).

regarding a loan modification for nearly two years.  It was only after this extended period and receiving and reviewing a loan modification packet that Bank of America denied Plaintiffs' request for a loan modification.  The only conclusion to be drawn from the allegations of Plaintiffs' Complaint is that Defendants considered Plaintiffs for a loan modification.  For these reasons, the Court will dismiss Plaintiffs' third cause of action as a matter of law.

D.      UNJUST ENRICHMENT

Plaintiffs claim that Defendants' actions caused unnecessary fees and charges for the Plaintiffs and thereby Defendants were unjustly enriched.  "The doctrine of unjust enrichment is designed to provide an equitable remedy where one does not exist at law.  Therefore, where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available."[34]  Here, the parties relationship is governed by the relevant loan agreements.  To the extent Plaintiffs conclude Defendants sought charges or fees beyond that allowed by contract, their proper recourse is through the agreements.  Therefore, because Plaintiffs have a remedy at law, the Court will dismiss their unjust enrichment claim.

E.      FDCPA

Defendants assert that Plaintiffs' FDCPA claims fail as a matter of law because Defendants are not "debt collectors" for purposes of the FDCPA.  The FDCPA makes clear that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a

---

[34]*Selvig v. Blockbuster Enters.*, 266 P.3d 691, 698 (Utah 2011) (internal quotations marks and citations omitted).

debt which was not in default at the time it was obtained by such person."[35]  The allegations in the Complaint state that Defendant Bank of America began servicing the debt in 2007.  The debt was not in default until much later.  Further, "[t]he law is well-settled that mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."[36]  Thus, Plaintiffs' FDCPA claims as to Defendant Bank of America fail as a matter of law.

As to Defendant BNY, Plaintiffs allege that Defendants violated the provisions of the FDCPA by attempting to contact Plaintiff Annette Menlove at her work on two occasions and providing an inaccurate statement of the amount owed.  Both of these factual allegations relate to actions taken by Defendant Bank of America.  Absent from Plaintiffs' Complaint are any factual allegations supporting an FDCPA claim against BNY.  Therefore, this claim will be dismissed.

F.   AMENDMENT

In the final line of their Response, Plaintiffs "ask the [C]ourt to allow this case to proceed or, in the alternative, to grant Plaintiffs leave to amend their Complaint."[37]  Defendants note in the preliminary statement of their Reply that Plaintiffs have not properly sought leave to amend and argue that, in the event the proposed amendment is based on the additional allegations contained in Plaintiffs' Response, amendment would be futile.

"Although the 'failure to file a formal motion is not always fatal, a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the

---

[35]15 U.S.C. § 1692a(6)(F).

[36]*James v. Wells Fargo Bank*, 2011 WL 1874707, at *3 (D. Utah May 17, 2011) (internal quotation marks and citations omitted).

[37]Docket No. 6, at 13.

proposed amendment before the court is required to recognize that a motion for leave to amend is before it.'"[38]  "[A] brief request, made in opposition to a motion to dismiss, that neither describes nor gives grounds for amendment does not satisfy this standard."[39]

Here, Plaintiffs' one line request does not provide this Court or Defendants notice of any basis for amendment.  The Court also finds that, taking the additional allegations contained in Plaintiffs' Response into consideration, Plaintiffs fail to state a claim for relief as a matter of law. For these reasons, the Court will decline to recognize Plaintiffs' brief request as a motion to amend.

## IV.  CONCLUSION

Based on the foregoing, the Court finds that Plaintiffs' Complaint fails to state a claim upon which relief can be granted.  It is therefore

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint (Docket No. 4) is GRANTED.  The hearing set in this matter for September 27, 2012, is hereby STRICKEN.  The Clerk of Court is directed to close this case forthwith.

DATED   September 24, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[38]*Koyle v. Wells Fargo Bank Minn.*, 470 F. App'x 712, 713 (10th Cir. 2012) (quoting *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

[39]*Id.* (citing *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010); *Calderon*, 181 F.3d at 1185–87; *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370–71 (10th Cir. 1989)).

14